OPINION
These appeals are from decisions of the Court of Common Pleas, Coshocton County and, while not consolidated, will be addressed jointly as the oral arguments were so presented.
 STATEMENT OF FACTS
The First Assignment of Error in each case is identical, to wit:
 I THE TRIAL COURT ERRED WHEN FAILING TO RULE THAT OHIO REVISED CODE § 3109.051 WAS FACIALLY UNCONSTITUTIONAL AND/OR UNCONSTITUTIONALLY APPLIED.
The Second Assignment of Error in Case No. 00-CA-028 is as follows:
 II THE TRIAL COURT'S DECISION TO GRANT APPELLEE, CAROL A. WOLFE, THIRD PARTY VISITATION RIGHTS WITH THE APPELLANT'S MINOR CHILDREN WAS CONTRARY TO LAW, CONSTITUTED AN ABUSE OF DISCRETION BY THE TRIAL COURT, AND IS NOT SUPPORTED BY, AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
The Second Assignment of Error in Case No. 01-CA-003 is as follows:
 II THE TRIAL COURT ERRED WHEN GRANTING ATTORNEY GENERAL'S MOTION FOR JUDGMENT ON THE PLEADINGS.
 I.
The First Assignment of Error in each appeal is predicated on the decision of the United States Supreme Court in Troxel v. Granville
(2000), 530 U.S. 57, which construed, as to its language and application, under constitutional due process requirements, R.C. Sec. 2610.160(3) of the State of Washington. Such statute provides:
 (3) Any person may petition the court for visitation rights at any time including, but not limited to, custody proceedings. The court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circumstances.
The grandparent or other person visitation statute in Ohio is contained in R.C. § 3109.051(B),(C) and (D) as follows:
 (B)(1) In a divorce, dissolution of marriage, legal separation, annulment, or child support proceeding that involves a child, the court may grant reasonable companionship or visitation rights to any grandparent, any person related to the child by consanguinity or affinity, or any other person other than a parent, if all of the following apply:
 (a) The grandparent, relative, or other person files a motion with the court seeking companionship or visitation rights.
 (b) The court determines that the grandparent, relative, or other person has an interest in the welfare of the child.
 (c) The court determines that the granting of the companionship or visitation rights is in the best interest of the child.
 (2) A motion may be filed under division (B)(1) of this section during the pendency of the divorce, dissolution of marriage, legal separation, annulment, or child support proceeding or, if a motion was not filed at that time or was filed at that time and the circumstances in the case have changed, at any time after a decree or final order is issued in the case.(C) When determining whether to grant parenting time rights to a parent pursuant to this section or section 3109.12 of the Revised Code or to grant companionship or visitation rights to a grandparent, relative, or other person pursuant to this section or section 3109.11 or 3109.12 of the Revised Code, when establishing a specific parenting time or visitation schedule, and when determining other parenting time matters under this section or section 3109.12 of the Revised Code or visitation matters under this section or section 3109.11 or 3109.12 of the Revised Code, the court shall consider any mediation report that is filed pursuant to section 3109.052 [3109.05.2] of the Revised Code and shall consider all other relevant factors, including, but not limited to, all of the factors listed in division (D) of this section. In considering the factors listed in division (D) of this section for purposes of determining whether to grant parenting time or visitation rights, establishing a specific parenting time or visitation schedule, determining other parenting time matters under this section or section 3109.12 of the Revised Code or visitation matters under this section or under section 3109.11 or 3109.12 of the Revised Code, and resolving any issues related to the making of any determination with respect to parenting time or visitation rights or the establishment of any specific parenting time or visitation schedule, the court, in its discretion, may interview in chambers any or all involved children regarding their wishes and concerns. If the court interviews any child concerning the child's wishes and concerns regarding those parenting time or visitation matters, the interview shall be conducted in chambers, and no person other than the child, the child's attorney, the judge, any necessary court personnel, and, in the judge's discretion, the attorney of each parent shall be permitted to be present in the chambers during the interview. No person shall obtain or attempt to obtain from a child a written or recorded statement or affidavit setting forth the wishes and concerns of the child regarding those parenting time or visitation matters. A court, in considering the factors listed in division (D) of this section for purposes of determining whether to grant any parenting time or visitation rights, establishing a parenting time or visitation schedule, determining other parenting time matters under this section or section 3109.12 of the Revised Code or visitation matters under this section or under section 3109.11 or 3109.12 of the Revised Code, or resolving any issues related to the making of any determination with respect to parenting time or visitation rights or the establishment of any specific parenting time or visitation schedule, shall not accept or consider a written or recorded statement or affidavit that purports to set forth the child's wishes or concerns regarding those parenting time or visitation matters.(D) In determining whether to grant parenting time to a parent pursuant to this section or section 3109.12 of the Revised Code or companionship or visitation rights to a grandparent, relative, or other person pursuant to this section or section 3109.11 or 3109.12 of the Revised Code, in establishing a specific parenting time or visitation schedule, and in determining other parenting time matters under this section or section 3109.12 of the Revised Code or visitation matters under this section or section 3109.11 or 3109.12 of the Revised Code, the court shall consider all of the following factors:
 (1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;
 (2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;
 (3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;
(4) The age of the child;
 (5) The child's adjustment to home, school, and community;
 (6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;
(7) The health and safety of the child;
 (8) The amount of time that will be available for the child to spend with siblings;
(9) The mental and physical health of all parties;
 (10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;
 (11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 (12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;
 (13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 (14) Whether either parent has established a residence or is planning to establish a residence outside this state;
 (15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;
 (16) Any other factor in the best interest of the child.
The historical events leading to the appeal of Case No. 00-CA-028 are that appellant, Michelle L. Fischer, the daughter of appellee, Carol A. Wolfe, was married to appellee Mark A. Wright as of the date of birth of Evan A. Wright on 9/16/89.
Their marriage was dissolved on 1/13/92.
Appellant married Jimmy Lee Elson on 6/26/93. Zachary David Elson was born to them on 3/31/94. This marriage was dissolved on 2/26/96.
While appellant and her mother initially had no problems with visitation, and while appellant does not object to visitation as such, appellant had concerns over such visitations taking place at her mother's home because of the presence of loaded guns, allegations of domestic violence, the effect of secondhand smoke and the infidelity of her mother's husband, Thomas Wolfe.
She wished to limit visitations to her (appellant's) residence.
Appellee, Carol A. Wolfe, avoided this restriction by arranging visitations at her own home through the fathers of each of such children.
The relationship between mother and daughter deteriorated thereafter.
Appellee, Carol A. Wolfe, filed for grandparent's companionship under R.C. § 3109.051 and to consolidate Case Nos. 91-CI-263 and 96-CI-9.
Consolidation was granted.
Appellant filed a motion to dismiss the companionship motion, asserting the unconstitutionality of such statute (R.C. § 3109.051). The Attorney General was not joined in such action.
The natural fathers were initially not served but appeared pro-se and were subsequently joined.
After a lengthy evidentiary hearing, the Magistrate issued findings of fact and conclusions of law.
Appellees, Mark A. Wright and Jimmy Lee Elson consented to the motion of appellee, Carol A. Wolfe.
The trial court adopted and approved the Magistrate's findings and determined that R.C. § 3109.051 was constitutional.
As to Case No. 01-CA-003, such arose out of a Declaratory Judgment action filed in the General Division of the Court of Common Pleas, Coshocton County in which appellant sought to declare R.C. § 3109.051
facially unconstitutional and unconstitutionally applied.
The Attorney General was not served, but did voluntarily intervene.
On a motion by the Attorney General to dismiss under Civil Rule12(C), the trial court determined the statute to be both constitutional on its face and as applied.
No evidence was heard as to the application of such statute to the facts of this case and the request to consolidate such Declaratory Judgment action with Case Nos. 91-CI-263 and 96-CI-9 was denied. However, the same Judge who reviewed the findings of fact and conclusions of law in such domestic relations cases also made the determination in the Declaratory Judgment action.
Of consideration relative to both appeals are : Troxel v. Granville,supra, Epps v. Epps (Aug. 9, 2001), Ashland App. No. 01COA0143, unreported and R.C. § 2721.12.
Revised Code § 2721.12 states in applicable part:
 (A) Subject to division (B) of this section, when declaratory relief is sought under this chapter in an action or proceeding, all persons who have or claim any interest that would be affected by the declaration shall be made parties to the action or proceeding. Except as provided in division (B) of this section, a declaration shall not prejudice the rights of persons who are not made parties to the action or proceeding. In any action or proceeding that involves the validity of a municipal ordinance or franchise, the municipal corporation shall be made a party and shall be heard, and, if any statute or the ordinance or franchise is alleged to be unconstitutional, the attorney general also shall be served with a copy of the complaint in the action or proceeding and shall be heard. In any action or proceeding that involves the validity of a township resolution, the township shall be made a party and shall be heard.
In Troxel v. Granville, supra, the United States Supreme Court reviewed Washington State Revised Code Section 26.10.160(3).
Justice O'Connor, writing for the majority, followed prior Supreme Court decisions in holding:
 The Fourteenth Amendment's Due Process Clause has a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests," Washington v. Glucksberg, 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772, including parents' fundamental right to make decisions concerning the care, custody, and control of their children, see, e.g., Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551. Pp. 2059-2061.
The majority followed Justice O'Connor's reasoning that:
 Washington's breathtakingly broad statute effectively permits a court to disregard and overturn any decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interest. A parent's estimation of the child's best interest is accorded no deference. The State Supreme Court had the opportunity, but declined, to give § 26.10.160(3) a narrower reading. A combination of several factors compels the conclusion that § 26.10.160(3), as applied here, exceeded the bounds of the Due Process Clause.
The decision appears to state that Section 26.10.160 was unconstitutionally applied rather that facially unconstitutional although it affirmed the decision of the Washington Supreme Court which held that:
 § 26.10.160(3) unconstitutionally infringes on the fundamental right of parents to rear their children by allowing "`any person' to petition for forced visitation of a child at `any time' with the only requirement being that the visitation serve the best interest of the child," the Washington visitation statute sweeps too broadly.
Ultimately, however, the Supreme Court concluded Section 26.10.160(3),as applied to Granville:
 *** unconstitutionally infringes on that fundamental **2061 parental right. The Washington nonparental visitation statute is breathtakingly broad. According to the statute's text, "[a]ny person may petition the court for visitation rights at any time," and the court may grant such visitation rights whenever "visitation may serve the best interest of the child." § 26.10.160(3) (emphases added). That language effectively permits any third party seeking visitation to subject any decision by a parent concerning visitation of the parent's children to state-court review. Once the visitation petition has been filed in court and the matter is placed before a judge, a parent's decision that visitation would not be in the child's best interest is accorded no deference. Section 26.10.160(3) contains no requirement that a court accord the parent's decision any presumption of validity or any weight whatsoever. Instead, the Washington statute places the best-interest determination solely in the hands of the judge. Should the judge disagree with the parent's estimation of the child's best interests, the judge's view necessarily prevails. Thus, in practical effect, in the State of Washington a court can disregard and overturn any
decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests.
The decision held that the application of § 26.10.160(3) to Granville violated her due process right to make decisions concerning the care, custody, and control of her daughters.
The ultimate conclusion to be reached is that the United States Constitution under the due process clause superimposes a requirement that a court must accord special weight to a parent's own determination of a child's best interest in addition to other statutory requirements. It did not determine that a statute lacking this requirement in its stated terms was necessarily unconstitutional. While the Supreme Court uses the words "mother's own determination", it cannot be concluded that such is limited to a mother's wishes only, as opposed to a father's wishes, as the natural father in Troxel was deceased.
In Epps, supra, this Court recognized the constitutional relevance ofTroxel by stating:
 Thereafter, if a fit parent's determination on such issue becomes subject to judicial review, the court must at least afford some special weight to said parent's own decision.
 The United States Supreme Court did not find all state statutes regarding grandparents' visitation to be unconstitutional, noting, "We do not and need not, define today the precise scope of the parental due process right in the visitation context." The Court explained the specific manner in which a statutory standard is applied must not unconstitutionally infringe upon a parent's right to make decisions regarding the care, custody and control of his/her children.
This Court in finding R.C. § 3109.051 constitutional on its face, addressed the significant differences between the Washington and Ohio statutes and failed to discern from the record a failure of the trial court to appropriately consider the mother's wishes.
 I.
Now, in addressing the specific Assignments of Error, this Court determines in 00-CA-028 that, as to the First Assignment of Error, the appellant was required, upon making the motion to dismiss based upon the unconstitutionality of R.C. § 3109.151 to notice the Attorney General.
While these cases did not commence as actions in Declaratory Judgment, the appellant's motion was predicated on the court issuing such a declaration and as to the motion, it became a proceeding in Declaratory Judgment.
Revised Code § 2721.12, while applying solely to actions in Declaratory Judgment also applies to any "proceeding", not merely a complaint. This statute requires that the Attorney General be served if any statute is alleged to be unconstitutional. Without such notice the court lacked jurisdiction to rule upon the facial constitutionality of R.C. § 3109.151. However, this court in Epps, supra, previously determined such statute to be constitutional as to its language.
The constitutional application, as differentiated from facial scrutiny, of R.C. § 3109.151 would not necessarily require notice to the Attorney General as the statute itself is not being attacked but merely it's relation to the specific facts.
In the case sub judice we are not involved with the mother's wishes as to prevention of visitation but only as to the location thereof.
No problems apparently existed as to visitation (T. 1/26/00 at p. 617) until those matters referenced heretofore became concerns. In fact, the record and findings of fact of the Magistrate clearly demonstrate an extensive relationship between appellee, Carol A. Wolfe and the children through approved visitation.
Therefore, within its strict interpretation, Troxel, supra, is not applicable.
The record reflects that, the Magistrate specifically gave weight to the wishes of appellant by addressing each of her concerns. (The extramarital affair was not required to be included in the ruling.)
Paragraphs (28), (29), (41), (42) and (43) of the findings of fact of state:
 (28) In May of 1998, Carol A. Wolfe and Thomas Wolfe got into an argument over a set of keys to an automobile. This occurred during a time when Carol and Thomas Wolfe were having marital problems. After some "pushing and shoving" as Carol A. Wolfe described the incident, Carol called "911". During her attempt to contact the authorities, Thomas Wolfe grabbed the phone and unplugged it. When the Sheriff's Department tried to phone back, there was no answer at the residence, so a deputy was dispatched to the scene and Thomas Wolfe was arrested for domestic violence. Carol A. Wolfe denied at hearing that she was injured in any way during this incident and denied that she has ever been physically abused by Thomas Wolfe.
 (29) Thomas Wolfe successfully underwent anger management counseling and the domestic violence charge was dismissed;
***
 (41) In the past, Michelle L. Fischer has asked Carol and Thomas Wolfe to not smoke cigarettes in the presence of the children, especially Zachary, due to the smoke causing or aggravating some breathing problems of the children. Carol A. Wolfe no longer smokes. Thomas Wolfe still smokes.
 (42) Thomas Wolfe has a gun collection which is kept in the home of Carol and Thomas Wolfe. These guns are kept in a locked filing cabinet in the Wolfe's bedroom with the ammunition stored separately under a combination lock.
 (43) Although Thomas Wolfe has been arrested for domestic violence, there was no credible evidence presented at trial that he has ever physically struck Carol A. Wolfe or the minor children. In addition, there was no credible evidence presented at trial that the domestic violence incident happened while the minor children were at the Wolfe residence.
The rulings in the conclusions of law at paragraphs (21) and (22) order the following:
 (21) During visitation, there shall be no smoking in the presence of the children;
 (22) During visitation, all guns at the Wolfe residence will be in a locked cabinet or locked room and the children shall have no access to the keys or lock combinations;
In addition, as to the wishes of the respective fathers of each child, the Magistrate found at paragraph (15):
 (15) Jimmy Lee Elson and Mark A. Wright are in agreement with the above-outlined sharing of their visitation time with Carol A. Wolfe as evidenced by their testimony at the Magistrate's hearing.
Therefore this court determines that the record indicates special attention and weight was given by the Magistrate and approved by the trial court of the mother's and fathers' wishes even though this cause is primarily one of location rather than of visitation as addressed inTroxel, supra.
We therefore disagree with the assertion of unconstitutional application of R.C. § 3109.051.
Therefore the First Assignment of Error in Case No. 00-CA-028 and Case No. 01-CA-003 are denied.
 II.
As to the Second Assignment of Error in Case No. 00-CA-028, the standards for abuse of discretion and manifest weight of the evidence are:
 On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine" whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. State v. Martin (1983), 20 Ohio App.3d 172. See also State v. Thompkins (1997), 78 Ohio St.3d 380.
The standard of review is abuse of discretion. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
We find that ample evidence, as accepted, supports the findings of fact and conclusions of law approved by the trial court and reject the Second Assignment of Error in Case No. 00-CA-028.
 II.
The Second Assignment of Error expressed in Case No. 01-CA-003 argues that the trial court's ruling under Civ. R. 12(C) in dismissing the Declaratory Judgment action was in error.
There are two prongs contained in such complaint, to wit:
(A) Constitutionality of R.C. § 3109.051
(B) Constitutional application thereof.
As this court in Epps, supra, and this opinion as stated heretofore have found such statute to be facially constitutional, we find that the trial court was correct in such decision.
This ruling would be in accordance with prior decisions in State Ex.Rel. Dickman v. Defenbacher (1955), 164 Ohio St. 142:
***
 A regularly enacted statute is presumed to be constitutional.
***
 Enactments of General Assembly are held constitutional unless clearly unconstitutional beyond reasonable doubt.
Similar rulings were made in Arnold v. City of Cleveland (1993),67 Ohio St.3d 35.
However, as to the application thereof, the trial court denied the request for joinder of Case Nos. 91-CI-263 and 96-CI-9 and also failed to take judicial notice of the trial court's prior acceptance of the magistrate's findings of fact and conclusions of law in such cases.
While the same Judge presided over such consolidated cases and the Declaratory Judgment action, we cannot presume that he considered such in granting the Attorney General's motion to dismiss on the pleadings without either of such actions or evidence presented.
We therefore agree with that portion of the Assignment of Error in Case No. 01-CA-003 which asserts that evidence, evidence by consolidation or judicial notice was required to rule as to the constitutional application of R.C. § 3109.051 to the facts of the case in issue.
We therefore, affirm in part and reverse in part as to this issue and remand for further proceedings consistent with this opinion.
JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Common Pleas Court, Coshocton County, Ohio in Case No. 00-CA-028 is affirmed and in Case No. 01-CA-003 is affirmed in part and reversed in part. Costs to appellant.
Hon. John W. Wise, J. Hon. John F. Boggins, J. concur, Hon. Julie A. Edwards, P.J. concurs in part, dissents in part.